# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J. DOE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>J. YATES, et al.,<br><br>　　　　　Defendants.<br>_____/ | Case No. 1:08-cv-01219-LJO-DLB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS AND GRANTING DEFENDANTS' REQUEST FOR EXTENSION OF TIME TO RESPOND TO SECOND AMENDED COMPLAINT<br><br>(Docs. 46, 47)<br><br>OBJECTIONS, IF ANY, DUE WITHIN **THIRTY DAYS** |

**I.　Findings and Recommendations**

　　　Plaintiff J. Doe ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. 1983.  Plaintiff initially filed this action in state court.  On August 15, 2008, defendants J. Yates, C. Hudson-Huckabay, and K. Scott removed this action to federal court.  (Doc.1.)  On September 9, 2008, Plaintiff filed her first amended complaint.[1]  (Doc. 18.)  On March 23, 2009, the Court screened Plaintiff's complaint and required her either to file an amended complaint or notify the Court of willingness to proceed only on the claims found to be cognizable.  (Doc. 26.)  On October 15, 2009, after several mail delivery issues because Plaintiff is proceeding under a fictitious name, Plaintiff filed her second amended complaint.  (Doc. 46.)

　　　The Court is required to screen complaints brought by prisoners seeking relief against a

---

[1] Plaintiff is a male to female preoperative transgender individual and uses the feminine for self-identification.  The Court will do so as well.

1

governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

## II.     Summary of Second Amended Complaint

Plaintiff is currently incarcerated at California State Prison, Lancaster. Plaintiff was previously incarcerated at Pleasant Valley State Prison ("PVSP") in Coalinga, California, where the events giving rise to this action allegedly occurred. Plaintiff names the following as defendants: governor Arnold Schwarzenegger; California Department of Corrections ("CDCR"); current director of CDCR Matthew Cate; former director of CDCR James Tilton; warden of PVSP James Yates; appeals coordinators H. Martinez, C. Hudson, and C. Huckabay[2]; correctional officers B. Diaz, P. Soares, E. Wolford, D. J. Hatten, G. Clark, M. Wilson, M. Dever, A. Rangal, J. Melendez, S. Gonzales[3], Griffin, and W. Brumbough[4]; correctional counselor

---

[2] C. Huckabay is possibly the same defendant as C. Hudson, who appears in this action as "C. Hudson-Huckabay." As this is unclear, the Court will treat both as separate individuals.

[3] Also spelled as "S. Gonsalez" and "S. Gonzalez."

[4] Also spelled as "Brumbaugh."

2

II S. Kern; correctional sergeants K. Scott, N. Green, and D. Huckabay; mail room employee D. Stone; John Does 2 through 4, officers in charge of mail services; correctional lieutenants J. D. Bennett and Smith. Plaintiff also names correctional officers A. Aguilar and J. Hernandez and appeals coordinator J. Herrera as defendants in the body of her complaint. Plaintiff seeks injunctive relief and monetary damages.

Plaintiff alleges the following events occurred at PVSP.[5] On November 10, 2007, Plaintiff requested to be housed with another transsexual or prison queen. Plaintiff made this request to defendants K. Scott, J. D. Bennett, S. Gonzales, J. Melendez, Griffin, and Brumbaugh. Plaintiff placed these defendants on constructive knowledge that she is a particularly vulnerable inmate that is in danger of violence. These defendants ignored Plaintiff's request and continued to house her with male inmates, despite her history of being assaulted by male inmates. Defendant H. Martinez refused to accept Plaintiff's grievance on safety and security issues, telling her to forward the grievance to prison staff, and to file a medical grievance if she needed medical assistance. Defendant H. Martinez refused to accept an appeal for an anticipated action. (Second Am. Compl. (SAC) ¶ 27.)

Around November 15, 2007, defendant S. Kern ordered Plaintiff into a nine-month segregated housing unit ("SHU") program. Defendant Kern further punished Plaintiff for standing up against staff discrimination that continues to target her with harassment because she is transgender. Defendant Kern was fully aware of Plaintiff's history of being assaulted when housed with male aggressors, but went ahead and approved Plaintiff for double cell housing. (SAC ¶ 28.)

On November 30, 2007, Plaintiff submitted a grievance to be removed from SHU and for California Department of Corrections and Rehabilitation ("CDCR") to provide a LGBTQ ombudsperson at each prison. Defendants Yates, Cate, and Tilton had no curriculum to combat prison rape and sexual abuse. (SAC ¶ 29.)

---

[5] Plaintiff gives a long general history prior to her incarceration at PVSP. (Pl.'s Sec. Am. Compl. 8-24.) This history is not necessary for the claims later alleged. The Court will thus summarize the claims alleged after Plaintiff was incarcerated at PVSP.

3

1  Around December 2, 2007, Plaintiff was targeted by segregation staff with harassment and
2  discrimination because she is transgender. After Plaintiff's second rape in segregation, another
3  inmate sent a care package ("bag of canteen") to Plaintiff. Defendant Melendez took the bag and
4  threw it in the trash upon realizing that the two inmates were transgender. (SAC ¶ 30.)

5  Around December 3, 2007, Plaintiff was ordered to sign a get along document or she
6  would be punished. Plaintiff informed defendants J. Melendez, S. Gonzales, Griffin, W.
7  Brumbough, and K. Scott that she did not feel comfortable with the new inmate, and requested to
8  be housed with another transsexual or prison queen. Plaintiff's requests were denied. The new
9  inmate forced Plaintiff to perform oral copulation, and that if she complained, he would kill her.
10 Plaintiff again requested a new cell mate, but defendants again denied the request, stating that she
11 would be punished with a disciplinary infraction if she refused. When Plaintiff exercised the
12 grievance process defendants Hudson and Martinez violated Plaintiff's First Amendment and due
13 process rights in the Department Operational Manual ("DOM") 54040.5.1. (SAC ¶ 31.)

14 Plaintiff wrote in an outgoing letter that she was raped. John Doe 2, officer in charge,
15 permitted Plaintiff to remain in the cell even after John Doe 2 had read the letter. Thomas
16 Clinton, another transgender inmate, faxed the complaint and grievances to defendants
17 Schwarzenegger, Tilton, Yates, and Mukasey, but no action was taken. (SAC ¶ 31.)

18 Around December 4, 2007, Plaintiff was ordered to sign another get along document or
19 she would be punished. The new cell mate was a known violent gang banger and had epilepsy.
20 Plaintiff refused to sign the document initially. Plaintiff, in fear of further punishment, signed the
21 document. Defendants J. Melendez, S. Gonzales, Griffin, W. Brumbough, K. Scott, and J. D.
22 Bennett participated in the forced signing. The new inmate forced Plaintiff to perform oral
23 copulation and raped her. Afterwards, the new inmate ordered Plaintiff to call man down as he
24 faked a seizure, so that he could be re-housed in a comfortable hospital bed. Plaintiff refused and
25 crawled into the top bunk. The new inmate then proceeded to beat her in the head with closed
26 fists. Plaintiff wrote in an outgoing letter that she was physically attacked and raped. John Doe
27 3, officer in charge, read the letter but continued to permit Plaintiff to remain in the cell. (SAC ¶
28 32.)

On December 5, 2007, Plaintiff asked defendant Melendez for a single cell. She was then interviewed by a group of staff, defendants Melendez, Gonsalez, Griffin, and K. Scott. Plaintiff asked to see a nurse. Defendant Scott had Plaintiff put in a management cell, but no nurse came. Plaintiff's second inmate grievance was rejected as a duplicate issue by defendants C. Hudson and H. Martinez. This was done to limit another serious controversy of letting Plaintiff be victimized again, and refusing to accept and log the grievance prevented transparency at PVSP. During the interview for the prison rapes, John Doe 4 violated Plaintiff's due process by not ensuring that Plaintiff had her victim advocate and victim support person present. (SAC ¶ 32.)

Around December 26, 2007, Plaintiff was bullied and harassed by other white inmates for having an African American inmate. Plaintiff complained to defendants Scott, Bennett, and Melendez, but no action was taken. Defendant H. Martinez found that this was not an appealable issue. (SAC ¶ 32.)

On January 8, 2008, at approximately 7:30 AM, Plaintiff was targeted for reprisal for exercising the grievance procedure by defendants B. Diaz, P. Soares, E. Wolford, and D. J. Hatten. After an unnecessary search and harassment, Diaz released Plaintiff with a warning. Plaintiff was left in the shower cell, exposed and naked, for approximately 45 minutes, for all the other passing inmates to see. Defendants Warden Yates, Sergeant D. Huckabay, and N. Green were on constructive notice that their staff continued to target and harass Plaintiff based on her sexual orientation. (SAC ¶ 35.)

Around January 31, 2008, Plaintiff complained of the lack of hormone treatment for her gender identity disorder. Weeks had passed and Plaintiff is not receiving the prescribed treatment. Defendants Yates and Cate violate her Eighth Amendment right by the fact that she has to see a qualified specialist by Tell-Med. (SAC ¶ 36.)

Around February 1, 2008, Plaintiff and her gay cell mate were targeted for discriminatory epitaphs for her sexual orientation. Defendants Soares, Diaz, and Hatten formed a line in front of the chow hall and subjected Plaintiff and her cell mate to name calling. These officers incited defendants G. Clark, M. Wilson, M. Dever, and A. Rangal to participate. This would happen right in front of Sergeants N. Green and D. Huckabay's office. Plaintiff complained to defendants

Green and Huckabay, but neither sergeant intervened. Plaintiff was told that the harassment was because Plaintiff had gotten the officers' friends in trouble over the sexual assault lawsuit and the grievances. (SAC ¶ 37.)

Defendants CDCR, Cate and Yates violate Plaintiff's Equal Protection rights by having no adequate standard of care and conditions of confinement for LGBTQ inmates, which incites violence, discrimination, and inhumane treatment. There is nothing in title 15 that ensures equality in treatment for LGBTQ inmates. All of CDCR policies assume everyone is "hetero-conforming." (SAC ¶ 38.)

On July 4, 2008, Plaintiff was subjected to a humiliating and public strip search by defendants J. Hernandez and A. Aguilar, by use of threats. Defendant H. Martinez violated Plaintiff's First Amendment rights by refusing to accept grievances to permit an Olsen review. Plaintiff was refused the opportunity to list her rapists as potential enemies. Defendants C. Hudson, H. Martinez, and C. Huckabay reject almost everything that Plaintiff submits via the inmate grievance process. (SAC ¶¶ 39-42.)

Around July 3, 2008, defendant D. Stone of the mail room opened Plaintiff's legal documents pertaining to her lawsuit in state court. D. Stone stated that Plaintiff could not mail her legal documents. Soon after, defendant Lt. Smith came into Plaintiff's cell and took all of Plaintiff's legal documents with her. When the documents were returned, much of Plaintiff's evidence and legal documents were missing. This action was done to chill Plaintiff's First Amendment rights. Defendant J. Herrera refused to accept Plaintiff's grievances regarding allowing her legal documents to exit the prison. (SAC ¶ 44.)

**III.    Discussion**

    **1.** *Eighth Amendment*

        **A.    Inmate Safety/Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. See

6

Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)); Johnson v. Lewis, 217 F.3d 726, 734 (9th Cir. 2000). A deprivation is sufficiently serious when the prison official's act or omission results "in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, the plaintiff must make a subjective showing that the prison official knew of and disregarded an excessive risk to an inmate's health or safety. Id. at 837; Johnson, 217 F.3d at 734.

Plaintiff states cognizable failure to protect claims against defendants K. Scott, J. D. Bennett, S. Gonzales, J. Melendez, Griffin, and Brumbaugh. Plaintiff alleges that she informed these defendants of a serious threat to her safety by being housed with male aggressors, but they ignored her concerns and threatened her with disciplinary action if she refused to take these other inmates as cell mates. (SAC ¶ 31.) Plaintiff also states cognizable failure to protect claims against John Does 2 and 3. Plaintiff alleges that these officers read Plaintiff's letters describing her rape but continued to let her remain in the cell. (SAC ¶¶ 31, 32.)

Plaintiff also states a cognizable failure to protect claim against defendant H. Martinez. Plaintiff alleges that she had filed a grievance seeking protection from possible sexual assault. Defendant Martinez allegedly failed to do anything because Plaintiff's request concerned an anticipated event, despite Plaintiff being a particularly vulnerable inmate to sexual assault. (SAC ¶¶ 27, 33.)

Plaintiff states a cognizable failure to protect claim against defendant S. Kern. Defendant Kern allegedly approved of Plaintiff's housing in the SHU in a double cell, despite being aware of

Plaintiff's history of being assaulted when housed with male aggressors. (SAC ¶ 28.)

Plaintiff has not alleged a cognizable failure to protect claim against defendants Schwarzenegger, Tilton, Yates, and Mukasey. Plaintiff alleges no facts that indicate these defendants actually knew of and disregarded an excessive risk to inmate safety.

### B. Serious Medical Needs

In applying the deliberate indifference standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle v. Gamble, 429 U.S. 105, 105-06 (1976). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff fails to state a cognizable claim for deliberate indifference to serious medical needs against defendants Yates or Cate. Plaintiff complains that she has to be interviewed by Tella-Med for her hormone treatment. (SAC ¶ 36.) That does not indicate deliberate indifference by either defendant. While a Tella-med interview is not the same as an on-site specialist, this does not indicate that defendants knew of and disregarded an excessive risk to inmate health or safety.

//

### 2. *First Amendment - Retaliation*

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v.

Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff states a cognizable retaliation claim against defendants B. Diaz, P. Soares, E. Wolford, and D. J. Hatten, who allegedly left Plaintiff exposed and naked in the shower for 45 minutes for other inmates to see because Plaintiff had filed inmate grievances. (SAC ¶ 35.) Plaintiff fails to state a cognizable retaliation claim regarding the alleged taunts and harassment by correctional officers at the chow hall. (SAC ¶ 37.) Verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983, Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). Plaintiff thus fails to state a cognizable retaliation claim against defendants G. Clark, M. Wilson, M. Dever, and A. Rangal.

Plaintiff states a cognizable retaliation claim against defendant Lt. Smith. Plaintiff alleges that defendant Smith entered Plaintiff's cell and removed all of Plaintiff's legal materials. Plaintiff alleges that when the documents were returned, much of Plaintiff's evidence and legal documents were missing. Plaintiff alleges this was done to chill Plaintiff's First Amendment rights. (SAC ¶ 44.)

Plaintiff states a cognizable retaliation claim against defendants Yates, Green, and D. Huckabay under a supervisory liability theory. Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the

9

violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff alleges that these three defendants were put on notice by Plaintiff as to the conduct of their staff against Plaintiff, and failed to do anything. (SAC ¶ 35.)

### 3. *Inmate Grievances*

Plaintiff alleges that defendants C. Hudson, H. Martinez, and C. Huckabay violated her First Amendment and due process by rejecting numerous inmate grievances, in violation of the Department Operational Manual. (SAC ¶ 43.) The existence of an administrative remedy process does not create any substantive rights and cannot support a claim for relief for violation of a constitutional right. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001). Actions in reviewing prisoner's administrative appeal cannot alone serve as the basis for liability under a § 1983 action. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

Here, Plaintiff alleges that defendants C. Hudson, H. Martinez, and C. Huckabay did not comply with the Department Operations Manual for inmate grievances and alleged sexual assault. The mere failure of these three defendants to follow department procedure for the inmate appeals process is not sufficient to state a claim.[6]

Plaintiff also alleges that defendant J. Herrera failed to process her inmate appeal regarding the mailing of her legal documents. As stated previously, actions in reviewing a prisoner's administrative appeal cannot alone serve as the basis for § 1983 liability.

### 4. *Due Process*

Plaintiff alleges that the bag of canteen she was to receive from a fellow inmate was destroyed by defendant Melendez. Plaintiff does not state a cognizable claim regarding the deprivation of property. The Due Process Clause protects prisoners from being deprived of

---

[6] The claim against defendant H. Martinez for failure to protect remains. Plaintiff's allegations against defendant H. Martinez go beyond mere action in reviewing an inmate grievance.

10

property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," Hudson v. Palmer, 468 U.S. 517, 533 (1984). California provides such a remedy. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam). Here, Plaintiff alleges at most an unauthorized deprivation of property. Plaintiff thus fails to allege a due process violation against defendant Melendez.

Plaintiff also alleges that defendant John Doe 4 violated Plaintiff's due process by not ensuring that Plaintiff had her victim advocate and victim support person present. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Here, Plaintiff has not sufficiently alleged a cognizable due process claim against John Doe 4 for failing to provide Plaintiff with a victim advocate during her interview regarding the prison rape. Plaintiff alleges no liberty interest in having a victim advocate present during this interview. Failure to follow the Department Operations Manual does not by itself create a liberty interest.

**5.**     ***Equal Protection***

Plaintiff alleges that defendants CDCR, Cate, and Yates violate the Equal Protection Clause by having no adequate standard of care and conditions of confinement for LGBTQ inmates, which incites violence, discrimination, and inhumane treatment against them. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established in two ways. First, a plaintiff establishes an equal protection claim by showing that the defendant has intentionally discriminated on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564. If an equal protection claim is based upon the defendant's selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement is based upon an "impermissible motive." Squaw Valley, 375 F.3d at 944; Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

Plaintiff alleges that nothing in title 15 of the California Code of Regulations ensures equality in treatment for LGBTQ inmates as opposed to hetero-conforming inmates. Under federal pleading standards, Plaintiff has stated a cognizable Equal Protection claim against defendant Cate and Yates.

1    Plaintiff is precluded from suit against the CDCR.  The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state.  Brooks v. Sulphur Springs Valley Elec. Co., 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); see also Seminole Tribe of Fla. v. Florida, 116 S.Ct. 1114, 1122 (1996); Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 677 (9th Cir. 1991).  The Eleventh Amendment bars suits against state agencies as well as those where the state itself is named as a defendant.  See Natural Resources Defense Council v. California Dep't of Tranp., 96 F.3d 420, 421 (9th Cir. 1996); Brook, 951 F.2d at 1053; Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity); Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir. 1989).  Because the CDCR is a state agency, it is entitled to Eleventh Amendment immunity from suit.

### 6.  *Strip Search*

Plaintiff was subjected to a humiliating and public strip search by use of threats by defendants J. Hernandez and A. Aguilar.  Strip searches do not typically violate the Fourth Amendment rights of prisoners.  See Michenfelder v. Sumner, 860 F.2d 328, 332-33 (9th Cir. 1988).  However, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional.  Id. at 332.  Plaintiff has not alleged sufficient facts to indicate a constitutional violation by defendants J. Hernandez and A. Aguilar. Plaintiff fails to allege that the strip search was unrelated to any legitimate penological interest, was excessive, vindictive, or harassing.

### 7.  *Access to the Courts*

Plaintiff alleges that defendant D. Stone in rejecting Plaintiff's mailing of legal documents as confidential violated her access to the courts.  Inmates have a fundamental constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 346 (1996).  The right is limited to direct criminal appeals, habeas petitions, and civil rights actions.  Id. at 354.  Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be

tried (backward-looking claim).  Christopher v. Harbury, 536 U.S. 403, 412-15 (2002).

      A necessary element for this claim requires that plaintiff show he suffered an "actual injury" by being shut out of court.  Christopher, 536 U.S. at 415; Lewis, 518 U.S. at 351.  The second element requires that plaintiff show defendant proximately caused the alleged violation of plaintiff's rights, the touchstone of which is foreseeability.  Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)); see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency, 216 F.3d 764, 784-85 (9th Cir. 2000).  Finally, the third element requires that plaintiff show he has no other remedy than the relief available via *this* suit for denial of access to the courts.  Christopher, 536 U.S. at 415.

      Plaintiff has not sufficiently alleged an actual injury resulted from defendant Stone's alleged rejection of Plaintiff's mailing of legal documents.  Plaintiff appears to allege that defendant Stone interfered with her action filed in Fresno Superior Court concerning her violations and injuries.  That action appears to be the current action before this Court, as Plaintiff's action was removed from Fresno Superior Court.  Plaintiff thus has not alleged that she was shut out of court.

      **8.**    *Defendants' Request for Extension of Time*

      On October 23, 2009, Defendants Yates, C. Hudson-Huckabay, and K. Scott requested an extension of time to file a response to Plaintiff's second amended complaint.  (Doc. 47.)  The Court finds that Plaintiff failed to state a cognizable claim against defendant C. Hudson-Huckabay.  The Court recommends that Defendants Yates and K. Scott be granted thirty (30) days from the date of the order resolving these Findings and Recommendations within which to file a response to Plaintiff's second amended complaint.

//

### IV.  Conclusion and Recommendation

      Based on the foregoing, the Court HEREBY RECOMMENDS the following:

      1.    This action proceed on Plaintiff's second amended complaint against (1) defendants K. Scott, J. D. Bennett, S. Gonzales, J. Melendez, Griffin, W. Brumbaugh, John Doe 2, John Doe 3, H. Martinez, and S. Kern for failure to

|   |   |
|---|---|
| 1 | protect in violation of the Eighth Amendment; (2) defendants B. Diaz, P. Soares, E. Wolford, D. J. Hatten, J. Yates, N. Green, and D. Huckabay for retaliation in violation of the First Amendment; and (3) defendants Cate and Yates for violation of the Equal Protection Clause of the Fourteenth Amendment; |
| 2. | All other claims be dismissed from this action for failure to state a claim upon which relief may be granted; |
| 3. | Defendants Schwarzenegger, CDCR, Tilton, Mukasey, G. Clark, M. Wilson, M. Dever, A. Rangal, John Doe 4, J. Hernandez, A. Aguilar, J. Herrera, C. Hudson-Huckabay, C. Huckabay, and D. Stone be dismissed from this action for failure to state a claim upon which relief may be granted; and |
| 4. | Defendants Yates and K. Scott be granted thirty (30) days after the resolution of these Findings and Recommendations within which to file their response to the second amended complaint. |

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 16, 2009**            /s/ **Dennis L. Beck**
                                                    UNITED STATES MAGISTRATE JUDGE